## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **AMY SAUNDERS**, *on behalf of herself and all others similarly situated,* | ) ) ) |
| | ) Case No. 3:24-cv-1777 |
| Named Plaintiff, | ) ) Judge |
| v. | ) ) Magistrate Judge |
| | ) |
| **KINGSTON HEALTHCARE, INC.** | ) **JURY DEMAND** |
| c/o Statutory Agent | ) **ENDORSED HEREON** |
| M. George Rumman | ) |
| One Seagate, Ste. 1960 | ) |
| Toledo, Ohio 43604, | ) |
| | ) |
| **&** | ) |
| | ) |
| **KINGSTON HEALTHCARE** | ) |
| **COMPANY,** | ) |
| c/o Statutory Agent | ) |
| M. George Rumman | ) |
| One Seagate 1960 | ) |
| Toledo, Ohio 43604, | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT

Now comes Named Plaintiff Amy Saunders ("Saunders" or "Named Plaintiff"), by and

through undersigned counsel, *individually and on behalf of all others similarly situated*, for her

Collective and Class Action Complaint against Defendants Kingston Healthcare, Inc. ("KHI") and

Kingston Healthcare Company ("KHC") (KHI and KHC hereinafter "Defendants" or "Kingston

Healthcare"[1] unless otherwise indicated) for Defendants' willful and joint failure to pay Named

---

[1] As more fully outlined below, Kingston Healthcare, Inc. and Kingston Healthcare Company are for all intents and purposes the same enterprise comprised of senior living facilities providing the same or similar assisted living, memory care, short-term stays, independent living, skilled nursing, and rehabilitation services at each facility, which are jointly owned, operated, and doing business as "Kingston Healthcare."

Plaintiff and other similarly situated employees overtime wages as well as failure to comply with all other requirements of the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15, and unjust enrichment common law, and states and alleges as follows:

## INTRODUCTION

1.      The FLSA is a broadly remedial and humanitarian statute designed to correct "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers[,]" 29 U.S.C. § 202(a), as well as "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc*., 450 U.S. 728, 739 (1981). The FLSA required Defendants to pay all non-exempt employees at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours each workweek. 29 U.S.C. § 207. State statutory and common law further required the payment of overtime and non-overtime compensation, and/or contained other compensation requirements. *See, e.g.,* O.R.C. § 4113.15.

2.      Named Plaintiff brings this Collective and Class Action Complaint to challenge the policies and practices of Defendants that violate the FLSA, 29 U.S.C. §§ 201-219, as well as state law, to recover unpaid wages and other damages from Defendants.

3.      As to Count I, Named Plaintiff seeks to prosecute FLSA claims as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of herself or themselves and other employees similarly situated" (the "FLSA Collective," as defined below).

4.      As to Counts II and III, Named Plaintiff also brings this case as a class action under Fed. R. Civ. P. 23 on behalf of herself and other members of two classes of persons who assert claims under state law (the "State Law Classes," consisting of the "OPPA Subclass" and the "Unjust Enrichment Subclass" as each more fully defined ).[2]

5.      Named Plaintiff, the FLSA Collective, and State Law Classes now seek to exercise their rights to unlawfully unpaid overtime wages and additional statutory liquidated damages in this matter as applicable, other penalties, in addition to prejudgment and post-judgment interest as applicable, costs and attorneys' fees incurred in prosecuting this action, the employer's share of relevant taxes, and such further relief as the Court deems equitable and just as a result of Defendants' companywide unlawful pay policies/practices as more fully described below.

## I.      **JURISDICTION AND VENUE**

6.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. *See* 29 U.S.C. § 216(b).

7.      This Court also has supplemental jurisdiction over the state-law claims because these claims arise from a common nucleus of operative facts. *See* 29 U.S.C. § 1367.

8.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Named Plaintiff's claims arose here. Specifically, Named Plaintiff worked for Defendants at one of their senior living facilities called "Kingston Residence of Perrysburg," which is located at 333 Boundary St., Perrysburg, Ohio 43551, and which is located in this judicial district and division.

---

[2] Some members of the FLSA Collective are also members of each of the State Law Classes, as both are defined hereinafter, as is Named Plaintiff.

9.      In addition, the Court has general jurisdiction over Defendants since the corporate headquarters is located at "Kingston Healthcare," One SeaGate, Suite 1960, Toledo, Ohio 43604,[3] which is in this judicial district and division.

## II.      THE PARTIES

### A.  Named Plaintiff Saunders

10.      Named Plaintiff is an individual, a citizen of the United States, and a resident of the State of Michigan.

11.      During her 12-year employment, Named Plaintiff worked in various hourly, non-exempt positions, including as a State Tested Nursing Assistant ("STNA"), dietary aide, and environmental services aide.

12.      Saunders' Consent to Join Form is filed with the Complaint, pursuant to 29 U.S.C. § 216(b), and is attached as Exhibit A.

### B.  Defendants' Business, Defendants' Status as an Employer, and Defendants' Status as an Enterprise

13.      Defendant KHI is a domestic for-profit corporation formed under the laws of the State of Ohio and can be served at its Statutory Agent address located at c/o M. George Rumman, One Seagate, Ste. 1960, Toledo, Ohio 43604.

14.      Defendant KHC is also a domestic for-profit corporation formed under the laws of the State of Ohio and can be served at its Statutory Agent address located at c/o M. George Rumman, One Seagate, Ste. 1960, Toledo, Ohio 43604.

15.      Defendants and the individual facilities to which they provide management services are joint employers for purposes of the causes of action alleged in this Complaint.

---

[3] *See* https://kingstonhealthcare.com/location/contact-us/ (last accessed October 9, 2024).

16.     Defendants operate as a single integrated enterprise named "Kingston Healthcare" that managed/manage and controlled/control all aspects of over thirteen (13) "[c]ommunities located across North Carolina, Ohio, Indiana, and New Mexico." According to Defendants' website, "[o]ur communities" offer independent living, assisted living, memory care, short-term stays, long-term and short-term skilled nursing, and rehabilitation services. A list of facilities/locations that form the same singe integrated enterprise are readily accessible on Defendants' website.[4]

17.     As part of the joint/integrated operations, Defendants utilized/utilize hourly, non-exempt employees, including Named Plaintiff, the FLSA Collective, and State Law Classes, in furtherance of their business purposes.

18.     During the relevant time period preceding the filing of the Complaint, it is estimated that there are at least over a thousand similarly situated employees of Named Plaintiff.

19.     At all times relevant, Defendants are/were an "employer" of Named Plaintiff and the FLSA Collective within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and are/were an employer of Named Plaintiff and the OPPA Subclass within the meaning of O.R.C. § 4113.15.

20.     At all times relevant, Defendants were/are an enterprise within the meaning of 29 U.S.C. § 203(r). That is, Defendants performed/perform related/interrelated activities through unified operations and common control for a common business purpose; namely, the operation of "Kingston Healthcare" facilities throughout the continental United States.

---

[4] *See* https://kingstonhealthcare.com/our-locations/ (last accessed Oct. 9, 2024).

21.     At all times relevant, Defendants had direct or indirect control and authority over Named Plaintiff's, the FLSA Collective's, and State Law Classes' working conditions, including matters governing the essential terms and conditions of their employment.

22.     At all times relevant, Defendants exercised authority and control over Named Plaintiff, the FLSA Collective, and State Law Classes.

23.     At all times relevant, Defendants had the authority to (and currently do) hire and fire employees, supervise and control the work schedules and work conditions of employees, determine the rate and method of pay, and/or maintain or are required to maintain employee records of Named Plaintiff, the FLSA Collective, and State Law Classes.

24.     At all times relevant, Defendants are an enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1)(A)(i), or have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

25.     During the preceding three (3) years, Defendants have had annual gross volume of sales made or business done of at least $500,000 (exclusive of excise taxes at the retail level that are separately stated) pursuant to 29 U.S.C. § 203(s)(1)(A)(ii).

26.     As alleged below, Defendants applied the policies and/or practices pertaining to the payment of wages, including overtime and other compensation, and timekeeping uniformly to their hourly, non-exempt employees.

27.     Each facility is engaged in related activities, i.e. all activities which are necessary to the operation and maintenance of "Kingston Healthcare" facilities.

28.     Each facility has common management, ownership, and related interests across all Kingston Healthcare facilities.

29.    Kingston Healthcare retains the ultimate authority over operational control over significant aspects of the day-to-day functions of Defendants' facilities, including supervising and controlling schedules, and conditions of employment of Saunders and the FLSA Collective, and State Law Classes.

30.    Each facility provides the same or similar array of services to residents at the Kingston Healthcare facilities.

31.    At all times relevant, Defendants had direct or indirect control and authority over Named Plaintiff's, the FLSA Collective's, and the State Law Classes' working conditions, including matters governing the essential terms and conditions of their employment.

32.    At all times relevant, Defendants exercised authority and control over Named Plaintiff, the FLSA Collective, and State Law Classes across all Kingston Healthcare facilities.

33.    At all times relevant, Defendants had the authority to (and do) hire and fire employees, supervise and control the work schedules and work conditions of employees, determine the rate and method of pay, and/or maintain employee records or are required to maintain employee records across all "Kingston Healthcare" facilities and locations.

34.    At all times relevant, Defendants were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because Defendants have employees engaged in commerce or in the production of goods for commerce, or have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, such as medical tools, personal protective equipment, computers, and cell phones.

35.    At all relevant times, Defendants have had an annual gross volume of sales made, or business done, of not less than $500,000 each of last three (3) years preceding the filing of this original Complaint.

## III.    FACTS

36.    Named Plaintiff is employed by Defendants as an STNA, among other positions listed above, which are each hourly, non-exempt positions.

37.    As an STNA, Named Plaintiff Robertson provides healthcare and related services for the sick or infirm. In her role, she primarily performed direct care duties and assistance to patients/residents, including cleaning the living space of each patient/resident, providing care and related services to residents such as daily grooming, changes, feeding, hydration, mobility of residents, addressing bed sores, end of life care, and aiding the nursing team with any duty they might require help with, among other duties.

38.    At all times relevant, Named Plaintiff, the FLSA Collective, and OPPA Subclass (who worked overtime hours, as applicable) were also hourly, non-exempt direct care employees entitled to overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty (40) each workweek. 29 U.S.C. § 207.

39.    At all times relevant, Named Plaintiff, the FLSA Collective, and OPPA Subclass were non-exempt employees within the meaning of 29 U.S.C. § 203(e) and O.R.C. § 4113.15.

40.    At all times relevant, Named Plaintiff, the FLSA Collective, and OPPA Subclass (who worked overtime hours, as applicable) were employees engaged in commerce within the meaning of 29 U.S.C. § 207.

41.    At all times relevant, Named Plaintiff, the FLSA Collective, and OPPA Subclass (who worked overtime hours, as applicable) are entitled to timely paid overtime compensation at

the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty (40) each workweek, 29 U.S.C. § 207; *see* O.R.C. § 4113.15, and Named Plaintiff and the OPPA Subclass are entitled to timely paid wages for all hours worked, O.R.C. § 4113.15.

42.     Named Plaintiff, the FLSA Collective, and OPPA Subclass (who worked overtime hours, as applicable) worked overtime hours during one or more workweeks during their employments with Defendants.

43.     Like the other members of the FLSA Collective and OPPA Subclass (who worked overtime hours, as applicable), Named Plaintiff Robertson regularly worked more than forty (40) hours in a workweek. Defendants were aware that Plaintiff, the FLSA Collective, and OPPA Subclass (who worked overtime hours, as applicable) worked overtime, but Defendants did not fully and properly pay them in accordance with the minimum requirements of the FLSA and state law for all of their compensable hours worked due to Defendants' companywide policies/practices as described below.

44.     Defendants shortchanged their non-exempt employees and failed to pay overtime compensation through unlawful practices that do not pay all overtime hours worked at one and one-half times their regular hourly rates for hours more than forty (40) per workweek.

45.     Defendants consistently, willfully, and intentionally failed to pay Named Plaintiff, the FLSA Collective, and State Law Classes for all hours, including overtime hours, worked, at the statutory overtime rate required. 29 U.S.C. § 207; *see* O.R.C. § 4113.15.

46.     In addition, Defendants have been unjustly enriched at the detriment and expense of Named Plaintiff and the Unjust Enrichment Class as a result of Defendants' failure to pay all non-overtime hours worked by Named Plaintiff and the Unjust Enrichment Class.

47.

**(Unpaid Wages Due to Failure to Pay Overtime at the Correct Regular Rate of Pay)**

48.     During their employments with Defendants, Named Plaintiff, the FLSA Collective, and OPPA Subclass were not fully and properly paid for all of their compensable overtime hours worked because Defendants did not properly calculate their regular rates of pay for the purposes of meeting the minimum requirements set forth in the FLSA and Ohio law, which resulted in unpaid overtime wages. Put another way, Defendants did not properly calculate overtime based on Named Plaintiff's, the FLSA Collective's, and OPPA Subclass's ***regular rate of pay***, as defined and required by the FLSA, but instead calculated overtime compensation based on their hourly rates of pay, resulting in unpaid overtime compensation.

49.     In particular, Defendants paid Named Plaintiff, the FLSA Collective, and OPPA Subclass a Base Hourly Wage as well as one or more additional forms of nondiscretionary remuneration that should have been included in the calculation of employees' regular rates of pay for overtime compensation calculation purposes.

50.     Bonuses and other forms of nondiscretionary remuneration which do not qualify for exclusion must be totaled in with other earnings to determine the regular rate on which overtime pay must be based. *See* 29 C.F.R. § 778.200.

51.     Examples of additional forms of nondiscretionary remuneration, include, but are not limited to, shift premiums for working certain shifts, attendance bonuses, incentive payments, and other forms of compensation which were based on objective, predetermined, and measurable criteria, payments that induced workers to work more efficiently or productively or at undesirable hours, incentivized or encouraged Named Plaintiff and similarly situated workers to work more steadily, rapidly and/or efficiently, and/or incentivized or encouraged workers to remain with the company given its importance to the overall operation of Defendants' business (all types of

nondiscretionary remuneration hereinafter "Additional Remuneration"). *See* 29 C.F.R §§ 778.207(b), 778.211(c). *See also* U.S. Department of Labor Fact Sheet # 56C: Bonuses under the Fair Labor Standards Act (FLSA).[5]

52.     Defendants informed, announced, and/or promised to Named Plaintiff, the FLSA Collective, and the OPPA Subclass the additional non-discretionary Additional Remuneration, upon hiring or otherwise during their employments. Named Plaintiff, the FLSA Collective, and the OPPA Subclass expected to receive one or more forms of Additional Remuneration and did in fact receive one or more forms of Additional Remuneration.

53.     During the last three years preceding the filing of this Complaint, Named Plaintiff, the FLSA Collective, and the OPPA Subclass received or earned their Base Hourly Wage in addition to the Additional Remuneration as described above in one or more workweeks when they work overtime hours, more than forty (40) hours in a single workweek.

54.     However, Defendants failed to fully include one or more forms of Additional Remuneration in calculating Named Plaintiff's, the FLSA Collective's, and the OPPA Subclass's regular rates of pay for overtime purposes during workweeks when they worked overtime in one or more workweeks.

**(Failure to Pay Wages Due to Defendants' Failure to Pay for All Hours/Unlawful Time Rounding Policies and/or Practices)**

55.     Named Plaintiff, the FLSA Collective, and State Law Classes are expected to clock in and out at the beginning and end of their shifts at Defendants' locations to keep track of their work hours. After arriving at the facility, Defendants apply a company-wide policy whereby

---

[5] https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses (last accessed October 9, 2024).

Defendants require their hourly, non-exempt employees to clock in/out[6] each day using an employee's personal identification number to keep track of their work hours.

56.    Immediately after clocking in, but prior to the scheduled "start" of the shifts, Named Plaintiff, the FLSA Collective, and State Law Classes perform integral and indispensable work, including, but not limited to, proceeding to the floor to perform direct patient/resident care duties.

57.    Once clocked in, Named Plaintiff, the FLSA Collective, and State Law Classes continued working at all times relevant up through and including until they clocked out at and/or after the scheduled "end" of their shift. All of this work is captured on Defendants' company-wide timekeeping system.

58.    Although there was no administrative difficulty in compensating them for such work, both as to beginning and end of shifts, Defendants do not count the time it takes Named Plaintiff, the FLSA Collective, and State Law Classes to complete the job duties described above as hours worked for purposes of computing overtime or non-overtime hours worked.

59.    Instead, Defendants rounded, edited, and/or otherwise manipulated Named Plaintiff's, the FLSA Collective's, and State Law Classes' work starting and ending times despite utilizing a timekeeping system that tracks *exactly* when they "punched" or clocked in/out and started/ended working each day. Despite knowing of their performance of work during workweeks when Named Plaintiff, the FLSA Collective, and State Law Classes worked more than 40 hours, Defendants did not pay them for such overtime which was required to be paid at "one and one-half times" their "regular rate[s]" of pay. *See* 29 U.S.C. § 207.

---

[6] For all intents and purposes, the terms "punch in" and "clock in" are used interchangeably and have the same meaning herein. In addition, the terms "punch out" and "clock out" also are used interchangeably and have the same meaning.

60.     Despite Defendants knowing that their employees were performing unpaid work that was integral and indispensable to their job duties beyond their scheduled shifts, Defendants did not pay Named Plaintiff, the FLSA Collective, and State Law Classes for the work performed prior to the scheduled "start" and after the scheduled "end" of their shifts.

61.     Thus, during all times relevant, Defendants failed to pay Named Plaintiff, the FLSA Collective, and State Law Classes for all overtime and non-overtime work performed because of Defendants' policy or practice of not paying employees for the beginning and end of shift work completed.

62.     At all times relevant, Defendants were aware that Named Plaintiff, the FLSA Collective, and State Law Classes performed integral and indispensable work as alleged above because Defendants trained and instructed these workers to perform such work, observed them performing this work, and they could be subject to discipline if they did not perform such work, but Defendants nevertheless failed to compensate them for this work.

63.     Defendants' failure to pay for all hours on-the-clock violates the FLSA and state law because they failed to compensate Named Plaintiff, the FLSA Collective, and State Law Classes for all time they actually worked for Defendants' benefit.

64.     This integral and indispensable unpaid work performed by Named Plaintiff, the FLSA Collective, and State Law Classes was practically ascertainable to Defendants.

65.     There was no practical or administrative difficulty to record/pay this integral and indispensable unpaid work performed by Named Plaintiff, the FLSA Collective, and State Law Classes.

66.     The unpaid work performed by Named Plaintiff, the FLSA Collective, and State Law Classes constituted part of their principal activities, was required by Defendants, and was performed for Defendants' benefit.

67.     Moreover, the unpaid work was an integral and indispensable part of other principal activities performed by Named Plaintiff, the FLSA Collective, and State Law Classes and was part of their continuous workday.

68.     However, the unpaid work was not fully paid on a straight time regular rate basis (during non-overtime weeks), nor was overtime for these hours worked paid at the rate of one and one-half times the regular rate for the hours worked in excess of forty (40) (during overtime weeks), as required by the FLSA. Although Named Plaintiff, the FLSA Collective, and State Law Classes performed their actual, principal job duties as described above at the beginning of the workday up through and including until they leave the premises at the end of the workday, Defendants did not pay this time worked, which was required to be paid as hours worked under the FLSA. Had Defendants implemented policies in compliance with the FLSA and Department of Labor regulations, Named Plaintiff, the FLSA Collective, and State Law Classes would have been compensated for additional overtime and non-overtime hours for which they were not paid.

69.     As a result of Defendants' failure to pay for all overtime as a result of the above practices and/or policies, Defendants' failure to compensate Named Plaintiff, the FLSA Collective, and OPPA Subclass for hours worked more than forty (40) hours per week at "one and one-half times" the employee's "regular rate[s]" of pay constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207, and Ohio law, O.R.C. § 4113.15, which requires the prompt payment of all wages earned and owed.

70. Although Defendants suffered and permitted Named Plaintiff, the FLSA Collective, and OPPA Subclass to work more than forty (40) hours per workweek, Defendants failed to pay Named Plaintiff, the FLSA Collective, and State Law Classes overtime at a rate of one and one-half times the regular rate of pay for all hours worked over forty (40) in a workweek. *See* 29 C.F.R. §§ 785.11, 785.13. Though Named Plaintiff, the FLSA Collective, and State Law Classes regularly complete/completed tasks that are required by Defendants, are performed for Defendants' benefit, and constitute part of their principal activities and/or are integral and indispensable to their principal activities before their shift starting times (and after shift ending times), these workers are not paid for the time spent performing these tasks because Defendants unilaterally did not count this time as hours worked and/or deducted this time worked, regardless of the fact that compensable work was completed. *See* 29 C.F.R. §§ 785.11, 785.13. As a result, Named Plaintiff, the FLSA Collective, and State Law Classes were not properly paid for many of their hours worked as required by the FLSA and state law.

71. Defendants shortchanged Named Plaintiff, the FLSA Collective, and State Law Classes and avoided paying overtime and non-overtime compensation, as applicable, through Defendants' unlawful policy described above. Defendants intentionally, knowingly, and willfully deducted time worked to reduce labor costs notwithstanding that Defendants' failure to pay for all hours worked violates Department of Labor regulations which require both that employees' time be rounded "to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour" and that the method "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b).

72. Moreover, Defendants utilize a timekeeping system that captures the exact time that Named Plaintiff, the FLSA Collective, and State Law Classes Members are performing such work,

however, Defendants' unlawful policy described above results in a system that has been rigged in Defendants' favor and is willfully designed to pay less time work than time paid. As a result, Named Plaintiff, the FLSA Collective, and State Law Classes have not been able to benefit from Defendants' timekeeping and/or rounding system; instead, Defendants' policy/practice and/or rounding system has resulted in, over a period of time, the willful failure to pay Named Plaintiff, the FLSA Collective, and State Law Classes for all hours worked, in violation of the FLSA, 29 C.F.R. § 785.48(b), and state law. *See* O.R.C. § 4113.15.

73.    Defendants' time rounding and/or editing policy, and time manipulation practices in conformity with this policy, are not neutral, facially or otherwise.

74.    Defendants' pay practices were the result of systematic and company-wide policies originating at the corporate level. Defendants' policies resulted from knowing or reckless executive decisions. Pursuant to the FLSA, 29 C.F.R. § 785.13, Defendants "cannot sit back and accept the benefits [of additional work completed by Named Plaintiff, the FLSA Collective, and State Law Classes] without compensating for them." "Management has the power to ….[and] must make every effort to" ensure all work completed at the beginning and end of shifts was paid in accordance with the FLSA and state law. *See id.*

75.    Defendants, through their supervisors and/or managers, knew that Named Plaintiff, the FLSA Collective, and State Law Classes were working the time for which they were not paid, as a result of Defendants' failure to pay for all hours on-the-clock, time-keeping, time recordation, and subsequent time rounding, and thus Defendants' actions were deliberate and willful within the meaning of the FLSA, and Defendants lacked a good faith basis for their actions. Defendants knew that Named Plaintiff, the FLSA Collective, and State Law Classes were entitled to overtime and/or

non-overtime compensation, as applicable, under federal and/or state law or acted in reckless disregard for whether they were so entitled.

76.     Defendants intentionally, knowingly, and willfully circumvented the requirements of the FLSA and state law.

77.     The above payroll practices resulted in knowing and willful overtime violations of the FLSA, 29 U.S.C. §§ 201-219; and resulted in the unlawful deprivation of wages of Defendants to the detriment of Defendants' employees, including Named Plaintiff, the FLSA Collective, and State Law Classes, *see* O.R.C. § 4113.15.

**(Unjust Enrichment)**

78.     Furthermore, Defendants were unjustly enriched by the retention of hourly wages that were earned and that rightfully belong to Named Plaintiff and the Unjust Enrichment Subclass. Defendants were unjustly enriched in that they induced Named Plaintiff and the Unjust Enrichment Subclass to perform work for the benefit of Defendants and retained the benefit of this work without having either paid or fully paid for the same.

79.     While Defendants represented to Named Plaintiff and the Unjust Enrichment Subclass that they would be paid for all time spent working for, and to the benefit of, Defendants, Defendants failed to pay for all hours worked that Named Plaintiff and the Unjust Enrichment Subclass were entitled to be paid, including all non-overtime hours worked up to and including forty (40) hours worked each workweek during their employments.

80.     At the end of the workday and/or workweek and after the work was performed, while operating under the understanding that they would be paid the agreed, straight-time hourly rate for all non-overtime hours worked, Defendants arbitrarily and without prior notice failed to pay for all hours worked. Named Plaintiff and the Unjust Enrichment Subclass were ultimately not

paid for all non-overtime hours worked at the straight-time hourly rates they were entitled to be paid (including any incentive payments for which they were eligible, as applicable), including as a result of Defendants' unlawful rounding and/or editing policy, and time manipulation practices in conformity with this policy.

81.     Although Named Plaintiff and the Unjust Enrichment Subclass satisfied the requirements of getting paid for all non-overtime hours at the straight-time promised hourly rate – by virtue of working, on the clock, pursuant to Defendants' policies, practices, and requirements – Named Plaintiff and the Unjust Enrichment Subclass were not paid for all hours worked in full as they were entitled.

82.     Defendants were unjustly enriched from Named Plaintiff and the Unjust Enrichment Subclass by failing and/or refusing to pay earned wages.

83.     Named Plaintiff and the Unjust Enrichment Subclass reasonably expected to be paid for all non-overtime hours work at the straight time hourly rates they expected to be paid.

84.     However, while Defendants knew that Named Plaintiff and the Unjust Enrichment Subclass worked for all the hours that improperly remain unpaid in full, Defendants nevertheless failed to pay for all hours worked because of unlawful time rounding and/or editing policy, and time manipulation practices in conformity with this policy, resulting in less compensation paid than compensation earned and owed.

85.     Defendants benefited from the fruits of Named Plaintiff's and the Unjust Enrichment Subclass's unpaid labor. Not only did Defendants benefit from Named Plaintiff and the Unjust Enrichment Subclass by wrongfully retaining the actual monies that should have been paid to Named Plaintiff and the Unjust Enrichment Subclass as non-overtime wages, Defendants also benefited in the form of increased sales, increased profits, increased ability to compete on the

price of Defendants' services, increased revenue, increased payments to ownership/stockholders, increased interest, increased volume, and increased market share, by using the nonpaid wages in furtherance of Defendants' business purposes.

86.     Allowing Defendants to retain the benefits provided by Named Plaintiff and the Unjust Enrichment Subclass under the circumstances presented as outlined above is demonstrably unjust.

87.     As a direct and proximate result of Defendants' unjust enrichment described herein, Named Plaintiff and the Unjust Enrichment Subclass have been damaged in an amount to be determined at trial, including but not limited to all non-overtime hours worked by Named Plaintiff and the Unjust Enrichment Subclass but not paid by Defendants at their straight time hourly rates required to be paid.

### (Defendants' Recordkeeping Violations)

88.     The FLSA and state law, by way of example Ohio law, required Defendants to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C §§ 4111.08, 4111.14(F); Ohio Const. Art. II, § 34a.

89.     For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period, and date of payment and pay period covered by the payment. 29 C.F.R. § 516.2.

90.     Ohio law also provides that employers "shall maintain a record of the name, address, occupation, pay rate, hours worked for each day worked and each amount paid an employee for a period of not less than three years following the last date the employee was employed." Ohio Const. Art. II, § 34a.

91.     Defendants kept records of hours worked, or otherwise had the ability to accurately track hours worked through Defendants' hardware, software, and/or systems, by Named Plaintiff, the FLSA Collective, and State Law Classes. However, at the time the hours worked by Named Plaintiff, the FLSA Collective, and State Law Classes were transmitted to payroll for compensation purposes, Defendants willfully and intentionally transmitted post-edited, rounded, modified, and inaccurate and/or incomplete records which do not include the beginning and end of shift work compensable work required by, performed for, and to the benefit of Defendants, which had the direct effect of reducing Defendants' labor costs to the detriment of Named Plaintiff, the FLSA Collective, and State Law Classes. Thus, Defendants willfully and intentionally did not properly record and pay all hours worked in violation of the FLSA and violated the FLSA and state law, as applicable, including Ohio law record keeping requirements.

**(The Willfulness of Defendants' Violations)**

92.     In addition to the above allegations demonstrating the willfulness of Defendants' wage violations as provided for above, Defendants knew or should have known as a substantial employer, in accordance with their obligations under the FLSA and Ohio law, that their workers, including Named Plaintiff, the FLSA Collective, and OPPA Subclass, were entitled to overtime compensation under federal and state law.

93.     By denying Named Plaintiff, the FLSA Collective, and OPPA Subclass overtime compensation as required by the FLSA, Defendants' acts were not based upon good faith. Through

legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions requiring the proper and prompt payment of overtime compensation under federal and Ohio law, as recited in this Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as required. Defendants therefore knew about the overtime compensation requirements of the FLSA and failed to comply with them or acted in reckless disregard as to Defendants' obligations under these laws in failing to comply with them.

94.     Moreover, Defendants' overtime compensation payment, and general wage compensation payment, obligations were clearly known by Defendants, but nonetheless willfully and intentionally disregarded. For example, O.R.C. § 4111.09 provides that "[e]very employer subject to sections 4111.01 to 4111.17 of the Revised Code, or to any rules issued thereunder, shall keep a summary of the sections, approved by the director of commerce, and copies of any applicable rules issued thereunder, or a summary of the rules, posted in a conspicuous and accessible place in or about the premises wherein any person subject thereto is employed." As approved by the Director of Commerce, this conspicuously-placed posting includes the language: "**OVERTIME** … [a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours in excess of 40 hours in one work week..."[7]

95.     In addition, federal law requires employers subject to the FLSA's wage provisions, such as Defendants, to post, and keep posted, a notice explaining the overtime provisions of the FLSA in a conspicuous place in all of their establishments so as to permit employees to readily

---

[7] *See, e.g.,* https://com.ohio.gov/static/documents/2023MWPoster.pdf (emphasis original) (last accessed October 9, 2024) (emphasis original).

read it, which includes the language that the employer must pay "**OVERTIME PAY**" at "[a]t least 1½ times the regular rate of pay for all hours worked over 40 in a workweek."[8]

96.    Upon information and belief, Defendants post the notices required to be posted under both Ohio law and the FLSA which each contain language outlining Defendants' overtime compensation requirements. By complying with state and federal overtime payment notice posting requirements, but nevertheless by not paying overtime compensation as required by these overtime payment notices, Defendants indisputably knew of the overtime requirements of the FLSA, or acted in reckless disregard for whether Named Plaintiff, the FLSA Collective, and OPPA Subclass were entitled to overtime compensation. Despite Defendants' knowledge, and mental awareness, of the overtime provisions of the FLSA and Ohio law, including by physically posting notices recognizing that Defendants were required to pay overtime compensation for all overtime hours worked, Defendants have, for many years, continued to fail to pay overtime wages for overtime hours worked to Named Plaintiff, the FLSA Collective, and OPPA Subclass.

97.    Moreover, as noted above, as a result of Defendants' timekeeping requirements, Defendants were specifically aware of the actual hours worked by Named Plaintiff, the FLSA Collective, and OPPA Subclass. However, at the time that the hours worked by Named Plaintiff, the FLSA Collective, and State Law Classes were transmitted to payroll for compensation purposes, Defendants willfully and intentionally transmitted post-edited, rounded, modified, and inaccurate and/or incomplete records which do not include beginning and end of shift compensable work required by, performed for, and to the benefit of Defendants, which had the direct effect of reducing Defendants' labor costs to the detriment of Named Plaintiff, the FLSA Collective, and

---

[8] https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/minwagep.pdf (last accessed October 9, 2024) (emphasis original).

OPPA Subclass. Ultimately, Defendants altered hours worked records in an attempt to get around overtime pay requirements. Thus, Defendants willfully and intentionally did not properly record and pay all hours worked in violation of the FLSA and Ohio law.

98.     Under these circumstances, Defendants' violations of the FLSA were willful, within the meaning of the FLSA inasmuch as Defendants had actual notice of the requirements of the FLSA.

99.     Named Plaintiff and the FLSA Collective are therefore entitled to liquidated damages equal to the amount of all unpaid overtime compensation pursuant to 29 U.S.C. § 260.

100.    In addition, Named Plaintiff and the OPPA Subclass are entitled to recovery under Ohio's law providing for recoverable untimely payment of wages pursuant to O.R.C. § 4113.15.

## IV.     COLLECTIVE AND CLASS ACTION ALLEGATIONS

### A.     FLSA Collective Action for Unpaid Overtime Wages

101.    Named Plaintiff brings Count I of this action on behalf of herself and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendants' unlawful conduct as described herein.

102.    As outlined above, the FLSA Collective to whom Named Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, of which Named Plaintiff herself is a member, is composed of and defined as follows:

> All current and former hourly, non-exempt employees of Defendants in the United States during the period of three years preceding the commencement of this action to the present who worked forty (40) or more hours during one or more workweeks and who were not paid overtime compensation at one and one-half times the employees' regular rate of pay for all hours worked in excess of forty (40) hours per workweek ("FLSA Collective").[9]

---

[9] Named Plaintiff reserves the right to amend and refine the definition of to whom she seeks to have provided with Court-authorized notice based upon further investigation and discovery.

103.    Such persons are "similarly situated" with respect to Defendants' FLSA overtime violations, as to the collective group of employees identified above, in that all were non-exempt employees of Defendants, all were subjected to and injured by Defendants' unlawful practice of failing to pay overtime compensation for all hours worked in excess of forty (40) per workweek, and all have the same claims against Defendants for unpaid overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

104.    Named Plaintiff and the members of the FLSA Collective, having willfully been not paid at least the federal overtime wage for the overtime hours they worked for Defendants pursuant to the common policies described herein, are "similarly situated" as that term is used in 29 U.S.C. § 216(b) and the associated decisional law. *See* 29 U.S.C. § 207.

105.    Named Plaintiff and the members of the FLSA Collective have been similarly affected by the FLSA overtime violations of Defendants in one or more workweeks during the relevant time period, which amount to a single decision, policy, or plan to willfully avoid paying all earned federal overtime wages owed.

106.    Named Plaintiff and the members of the FLSA Collective have been damaged by Defendants' willful refusal to pay at least the federal overtime wage for all overtime hours worked. As a result of Defendants' willful FLSA violations, Named Plaintiff and the members of the FLSA Collective are similarly situated to each other in that they are all entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

107.    Throughout her employment with Defendants, Named Plaintiff was subjected to the same timekeeping and payroll policies and practices by Defendants that led to less overtime wages paid than overtime hours worked that the members of the FLSA Collective were subjected to.

108.     Named Plaintiff is similarly situated to the members of the FLSA Collective and will prosecute this action vigorously on their behalf.

109.     This action is maintainable as an "opt-in" collective action pursuant to the FLSA as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs. In addition to Named Plaintiff, numerous current and former non-exempt employees are similarly situated with regard to their wages and claims for unpaid wages and damages. Named Plaintiff is representative of those other employees and is acting on behalf of their interests, as well as her own, in bringing this action.

110.     Maintaining this case as a collective action and issuing Notice to the FLSA Collective pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

111.     Named Plaintiff is entitled to send notice to all potential members of the FLSA Collective pursuant to Section 216(b) of the FLSA. Identification of potential members of the FLSA Collective is readily available from the timekeeping and compensation records, including timekeeping and payroll data, maintained by Defendants. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendants. Notice can be provided by means permissible under the FLSA and decisional law.

112.     Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to potential members of the FLSA Collective is appropriate because they have been subjected to the common business practices referenced in the paragraphs above, and the success of their claims depends upon the

resolution of common issues of law and fact, including, *inter alia*, whether Defendants satisfied the FLSA's requirements for payment of the statutory overtime wages.

113. Immediate, prompt notice of this matter to similarly situated persons pursuant to 29 U.S.C. § 216(b) – by Court order – is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

114. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs.

115. The precise size and identity of the group of potential members of the FLSA Collective are readily ascertainable from the payroll records, timekeeping records, and/or employee and personnel records of Defendants that Defendants were required to maintain, pursuant to the FLSA. Named Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that the group of potential members of the FLSA Collective consist of approximately several hundred or more persons.

**B.    Federal Rule of Civil Procedure 23 Class Action for Unpaid Wages**

116. Named Plaintiff brings Counts II and III under Federal Rule of Civil Procedure 23 as a class action on behalf of herself and all other members of the State Law Classes in two subclasses.

117. In particular, Named Plaintiff brings Count II under Federal Rule of Civil Procedure 23 as a class action on behalf of herself and all other members of the OPPA Subclass under O.R.C. § 4113.15, defined as:

> All current and former hourly, non-exempt employees of
> Defendants in Ohio during the period of two years preceding the

commencement of this action to the present who, during one or more workweeks, were not timely paid compensation for all hours worked ("OPPA Subclass" or "OPPA Subclass Members").

118. Named Plaintiff brings Count III under Federal Rule of Civil Procedure 23 as a class action on behalf of herself and all other members of the Unjust Enrichment Subclass under state common law for unjust enrichment defined as:

> All current and former hourly, non-exempt employees of Defendants during the period of six years preceding the commencement of this action to the present who, during one or more workweeks, were not paid compensation for all non-overtime hours worked ("Unjust Enrichment Subclass" or "Unjust Enrichment Subclass Members")

119. Together, the OPPA Subclass and Unjust Enrichment Subclass constitute the State Law Classes or State Law Classes Members.

120. The State Law Classes, as defined above, are each so numerous that joinder of all members is impracticable. Named Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that each of the State Law Classes consist of several hundred or more persons. The number of class members, as well as their identities, are ascertainable from the payroll and personnel records Defendants maintained, and were required to maintain, pursuant to the FLSA and state law. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; and Art II., Section 34a of the Ohio Constitution.

121. Named Plaintiff is a member of each of the State Law Classes and her claims for unpaid wages are typical of the claims of other members of the State Law Classes.

122. Named Plaintiff will fairly and adequately represent each of the State Law Classes and the interests of all members of the State Law Classes.

123. Named Plaintiff has no interests that are antagonistic to or in conflict with those interests of the State Law Classes that she has undertaken to represent.

124.    Named Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of each of the State Law Classes. Named Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the State Law Classes in this case.

125.    Questions of law and fact are common to each of the State Law Classes and predominate over any questions affecting only individual members. The questions of law and fact common to the State Law Classes arising from Defendants' conduct include, without limitation:

(a)    whether Defendants violated state law by failing to timely pay the State Law Classes Members for all overtime and/or non-overtime wages, as applicable, earned because of the violation(s) described herein;

(b)    what amount of unpaid and/or withheld compensation, including overtime and/or non-overtime compensation, is due to Named Plaintiff and the State Law Classes on account of Defendants' violations of Ohio law, O.R.C. § 4113.15, and common law unjust enrichment, as applicable;

(c)    whether the unpaid and/or withheld compensation remains unpaid in violation of state law;

(d)    whether Defendants' retention of the wages earned by Named Plaintiff and the Unjust Enrichment Subclass results in inequity; and

(e)    what amount of prejudgment interest, liquidated damages, and/or other monetary relief afforded by state law is due to Named Plaintiff and the State Law Classes on the overtime and/or non-overtime compensation, as applicable, or other entitled compensation which was withheld or not timely paid to them.

126.    Class certification is appropriate under Rule 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants with respect to the non-exempt employees comprising of the State Law Classes.

127.     Class certification is appropriate under Rule 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the State Law Classes, making appropriate relief with respect to Named Plaintiff and the State Law Classes each as a whole.

128.     Class certification is appropriate under Rule 23(b)(3) because the questions of law and facts common to the State Law Classes predominate over questions affecting individual members of the State Law Classes and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

129.     A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff's and members of the State Law Classes' claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court. Requiring State Law Classes members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many State Law Classes members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

130.     Named Plaintiff and counsel are not aware of any interfering pending litigation on behalf of the State Law Classes as defined herein.

## V.     CAUSES OF ACTION

### COUNT I
### (29 U.S.C. § 207 - FLSA COLLECTIVE ACTION
### FOR UNPAID OVERTIME COMPENSATION)

131.     Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

132.     This claim is brought as part of a collective action by Named Plaintiff on behalf of herself and other members of the FLSA Collective against Defendants, individuals who may join this case pursuant to 29 U.S.C. § 216(b).

133.     The FLSA requires that non-exempt employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay. 29 U.S.C. § 207(a)(1).

134.     During the three (3) years preceding the filing of this Complaint, Defendants employed Named Plaintiff and the FLSA Collective.

135.     Named Plaintiff and the FLSA Collective were paid as non-exempt employees.

136.     During the three (3) years preceding the filing of this Complaint, Named Plaintiff and the FLSA Collective worked in excess of forty (40) hours in one or more workweek(s), but were not paid for all overtime hours worked as a result of one or more of Defendants' policies and/or practices as alleged above.

137.     Defendants violated the FLSA with respect to Named Plaintiff and the FLSA Collective by failing to pay overtime for all hours worked over forty (40) hours in a workweek at one-and-one-half times (1.5x) their regular rates of pay because of Defendants' companywide policies and/or practices described herein.

138.     Defendants knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendants willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the FLSA Collective are entitled.

139.     The exact total amount of compensation, including overtime compensation, that Defendants have failed to pay Named Plaintiff and the FLSA Collective is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendants or were not kept by Defendants.

140.    Defendants' failure to keep records of all of the hours worked each workday and the total hours worked each workweek by Named Plaintiff and other similarly situated employees also violates the FLSA. *See* 29 C.F.R § 516.2(a)(7).

141.    Defendants knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Named Plaintiff and the FLSA Collective overtime compensation. Defendants' deliberate failure to pay overtime compensation to Named Plaintiff and the FLSA Collective was neither reasonable, nor was the decision not to pay overtime compensation made in good faith. By engaging in these practices, Defendants willfully violated the FLSA and regulations thereunder that have the force of law.

142.    As a result of Defendants' violations of the FLSA, Named Plaintiff and the FLSA Collective were injured in that they did not receive wages due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles Named Plaintiff and the FLSA Collective to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

**COUNT II**
**(O.R.C. § 4113.15 – RULE 23 CLASS ACTION**
**FOR OPPA VIOLATION ON BEHALF OF OPPA SUBCLASS)**

143.    Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

144.    The OPPA encompasses two claims. First, a violation of any other wage statute (including the FLSA) triggers a failure to timely pay wages under the OPPA.

145.    Second, the OPPA allows an employee to sue to recover liquidated damages if the wages due are not in dispute.

146.    Named Plaintiff and the OPPA Subclass Members have been employed by Defendants.

147.    At all times relevant, Defendants were an entity covered by the OPPA, and Named Plaintiff and OPPA Subclass Members have been employed by Defendants within the meaning of the OPPA.

148.    The OPPA requires Defendants to pay Named Plaintiff and OPPA Subclass Members all wages, including overtime and non-overtime compensation, on or before the first day of each month for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof *and* on or before the fifteenth day of each month for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

149.    As outlined above, Defendants did not, as required by O.R.C. § 4113.15(A), on or before the first day of each month, pay all wages earned by Named Plaintiff and the members of the OPPA Subclass on or before the first day of each month, the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and did not, on or before the fifteenth day of each month, pay these employees the wages earned by them during the last half of the preceding calendar month.

150.    As a result, Named Plaintiff's and OPPA Subclass Members' unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

151.    Defendants' violations of the OPPA, O.R.C. § 4113.15, injured Named Plaintiff and other OPPA Subclass Members in that they did not receive wages due to them in a timely fashion as required by Ohio Law.

152.    Defendants knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Named Plaintiff and the members of the OPPA Subclass all

wages owed in a timely fashion as required by Ohio law. Defendants' deliberate failure to timely pay all compensation owed to Named Plaintiff, and the members of the OPPA Subclass, was neither reasonable, nor was the decision not to pay in accordance with O.R.C. § 4113.15 made in good faith. By engaging in these practices, Defendants violated Ohio law and regulations that have the force of law.

153.   As a result of Defendants' violation of the OPPA, Named Plaintiff and OPPA Subclass Members are entitled to unpaid wages and liquidated damages pursuant to O.R.C. § 4113.15.

**COUNT III**
**(UNJUST ENRICHMENT – RULE 23 CLASS ACTION**
**ON BEHALF OF THE UNJUST ENRICHMENT SUBCLASS)**

154.   Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

155.   Named Plaintiff brings this claim on behalf of herself and the Unjust Enrichment Subclass as a result of Defendants' suffering or permitting her and the Unjust Enrichment Subclass to work for Defendants' benefit and for not paying them non-overtime wages for all the time that they worked due to the one or more of the pay policies/practices alleged above.

156.   As hereinabove alleged, Named Plaintiff and the Unjust Enrichment Subclass Members conferred a benefit upon Defendants in that Defendants received a direct monetary benefit from employees by retaining wages Named Plaintiff and the Unjust Enrichment Subclass were entitled to be paid. However, Named Plaintiff and the Unjust Enrichment Subclass were not paid the hourly rates that they were entitled and/or promised to be paid for all hourly work completed as a result of Defendants' pay policies/practices.

157. Defendants knew that they retained one or more benefits to the detriment of Named Plaintiff and the Unjust Enrichment Subclass in the form of unpaid wages, but nevertheless failed to pay them anyways.

158. Defendants have been unjustly enriched at the expense of Named Plaintiff and the Unjust Enrichment Subclass by the retention of promised hourly wages that were earned and that rightfully belong to Named Plaintiff and the Unjust Enrichment Subclass. Defendants were unjustly enriched in that they induced Named Plaintiff and the Unjust Enrichment Subclass to perform work for the benefit of Defendants and retained the benefit of this work without having paid for the same.

159. Allowing Defendants to retain the benefits provided by Named Plaintiff and the Unjust Enrichment Subclass – free, unpaid labor – under the circumstances presented as outlined above, is demonstrably unjust. Defendants have retained the benefit of Named Plaintiff's and the Unjust Enrichment Subclass's services without compensating them as promised, under circumstances in which it would be unjust and unconscionable to permit Defendants to do so.

160. As a result of Defendants having been unjustly enriched, Named Plaintiff and the Unjust Enrichment Subclass are entitled to compensation for the value of the benefit Named Plaintiff and the Unjust Enrichment Subclass conferred on Defendants.

161. Having injured Named Plaintiff and the Unjust Enrichment Subclass, Defendants are liable to Named Plaintiff and the Unjust Enrichment Subclass in the full amount of regular wages that remain unpaid, pre- and post-judgment interest as applicable, costs and reasonable attorney's fees as may be allowed by the Court, an award of damages representing Defendants' employers' share of FICA, FUTA, state employment insurance, and any other required employment taxes, and such other and further relief as provided under law.

## VI.     PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff requests judgment against Defendants and for an Order:

A.     Tolling of the statute of limitations, *freely*, as to all would-be Opt-In Plaintiffs to the date this matter was initially filed;

B.     Promptly order Defendants to provide all contact information, including but not limited to names, dates of employment, addresses, telephone numbers, and email addresses, of similarly situated individuals;

C.     Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA;

D.     Certifying this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Named Plaintiff and other members of the OPPA Subclass, who seek recovery under O.R.C. § 4113.15, and counsel of record as Class Counsel;

E.     Certifying this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Named Plaintiff and other members of the Unjust Enrichment Subclass, who seek recovery under common law unjust enrichment, and counsel of record as Class Counsel;

F.     Finding that Defendants' wage and hour policies and/or practices as alleged herein violate the FLSA, the OPPA, and the common law doctrine of unjust enrichment;

G.     Entering judgment against Defendants for damages for all unpaid overtime compensation owed to Named Plaintiff and the FLSA Collective during the applicable statutory period under the FLSA and continuing through trial;

H.     Entering judgment against Defendants for damages for all unpaid compensation owed to Named Plaintiff and the OPPA Subclass during the applicable statutory period under O.R.C. § 4113.15 and continuing through trial;

I.     Entering judgment against Defendants for damages for all unpaid compensation owed to Named Plaintiff and the Unjust Enrichment Subclass during the applicable six-year period preceding commencement of the action and continuing through trial;

J.     Entering judgment against Defendants for liquidated damages pursuant to the FLSA in an amount equal to all unpaid overtime compensation owed to Named Plaintiff and the FLSA Collective during the applicable statutory period under the FLSA and continuing through trial;

K.      Awarding to Named Plaintiff, the FLSA Collective, and State Law Classes Members unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the OPPA as to the OPPA Subclass, including but not limited to an amount equal to six per cent of the amount of the unpaid wages still unpaid or two hundred dollars per OPPA Subclass member, whichever is greater;

L.      Awarding Named Plaintiff, the FLSA Collective, and State Law Classes prejudgment interest, post-judgment interest, and an award of damages representing Defendants' employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

M.      Award monetary relief to Named Plaintiff and the Unjust Enrichment Subclass in an amount sufficient to divest Defendants of the amounts gained by Defendants' unjust enrichment;

N.      Awarding to Named Plaintiff a service award for her efforts in remedying various pay policies/practices as outlined above;

O.      Awarding to Named Plaintiff, the FLSA Collective, and State Law Classes attorneys' fees required for prosecution of this action, expert fees, and reimbursement of all costs and expenses;

P.      Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery;

Q.      Declaring judgment for all civil penalties to which Named Plaintiff and all other similarly situated employees may be entitled; and

R.      Awarding such other and further relief as this Court may deem equitable, necessary, just, or proper.

Respectfully submitted,

/s/ Daniel I. Bryant

Daniel I. Bryant (0090859), Trial Attorney
**BRYANT LEGAL, LLC**
4400 N. High St., Suite 310
Columbus, Ohio 43214
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

Esther E. Bryant (0096629)
**BRYANT LEGAL, LLC**
3450 W Central Ave., Suite 370
Toledo, Ohio 43606
Telephone: (419) 824-4439
Facsimile: (419) 932-6719
Email: Mbryant@bryantlegalllc.com
　　　Ebryant@bryantlegalllc.com

/s/ Ryan A. Winters

Joseph F. Scott (0029780), Trial Attorney
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221     F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221     F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*Attorneys for Named Plaintiff and Other Members*
*of the proposed FLSA Collective and proposed Rule 23 Class Counsel*

## JURY DEMAND

Named Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Daniel I. Bryant

Daniel I. Bryant